UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DAVID EASLEY, | : | Case No. 1:08-cv-601 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| GARY HAYWOOD, *et al.*, | : | |
| Defendants. | : | |

**ORDER DENYING DEFENDANT HAYWOOD'S
MOTION FOR JUDGMENT AS A MATTER OF LAW (Doc. 277)**

This civil action is before the Court on Defendant Gary Haywood's motion for judgment as a matter of law (Doc. 277) and the parties' responsive memoranda (Docs. 281, 284).

## I.  BACKGROUND

On May 4, 2015, this civil action proceeded to a jury trial. The jury was asked to determine whether Defendants Gary Haywood and Christopher Brannigan, correctional officers at the Southern Ohio Correctional Facility ("SOCF"), used excessive force against Plaintiff on July 3, 2008, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. (*See* Doc. 265).

After Plaintiff rested, Defendants orally moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). The Court denied their motion. Defendants renewed their Rule 50(a) motion at the close of their case. Again, the Court denied their motion.

On May 8, 2015, the jury returned a verdict in favor of Defendant Brannigan. The jury hung as to the excessive force claim brought against Defendant Haywood. Defendant Haywood now moves for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b).

## II.   STANDARD OF REVIEW

If a court does not grant a motion for judgment as a matter of law made pursuant to Federal Rule of Civil Procedure 50(a), and the movant renews his motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct entry of judgment as a matter of law. Fed. R. Civ. P. 50(b).[1]

> Judgment as a matter of law may only be granted if, <u>when viewing the evidence in a light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences, there is no genuine issue of material fact for the jury</u>, and reasonable minds could come to but one conclusion in favor of the moving party.

*Balsley v. LFP, Inc.*, 691 F.3d 747, 757 (6th Cir. 2012) (emphasis added) (citing *Barnes v. City of Cincinnati*, 401 F.3d 729, 736 (6th Cir. 2005)).

When considering a Rule 50(b) motion, a court should not weigh the evidence, question the credibility of witnesses, or substitute its judgment for that of the jury. *Schwartz v. Sun Co., Inc.,* 276 F.3d 900, 903 (6th Cir. 2002) (quoting *K & T Enterprises v. Zurich Ins. Co.*, 97 F.3d 171, 175–76 (6th Cir. 1996)). The motion should be granted "only if reasonable minds could not come to a conclusion other than one favoring the

---

[1] The renewed motion must be made within twenty-eight days after the entry of judgment, or, if as here, the motion addresses a jury issue not decided by a verdict, no later than twenty-eight days after the jury was discharged. Fed. R. Civ. P. 50(b).

movant." *K & T Enterprises*, 97 F.3d at 176.  A court's review is restricted to the evidence that was admitted at trial.  *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (citations omitted).

### III.   ANALYSIS

Defendant Haywood argues: (1) that the record contains no evidence which would allow a reasonable jury to conclude either that he used excessive force or that Plaintiff suffered physical injury as a result thereof; and (2) that he is entitled to qualified immunity.  The Court addresses these arguments in turn.

### A.   Evidence Relating to the Excessive Force Inquiry

Infliction of bodily harm upon a prisoner by a corrections officer gives rise to liability under 42 U.S.C. § 1983 if the alleged assault rises to the level of a constitutional violation.  *Caldwell v. Moore,* 968 F.2d 595, 599 (6th Cir. 1992).  "[U]nnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  *Hudson v. McMillian,* 503 U.S. 1, 6 (1992) (internal citations omitted).

To succeed on an Eighth Amendment claim, a prisoner must satisfy both an objective and a subjective component.  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011).  The subjective component requires the prisoner to demonstrate malicious intent on behalf of the prison personnel.  *Id.*  The key inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 6.  A court considers "the need for the application of the force, the relationship between the need and the amount of force that was used, and the

3

extent of injury inflicted." *Williams*, 631 F.3d at 383 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Courts may also look to the circumstances as reasonably perceived by the responsible officials on the basis of facts known to them and any efforts made to temper the severity of a forceful response. *Id.*

The objective component relates to the pain and injury suffered by the prisoner. *Williams*, 631 F.3d at 383. The prisoner must objectively show that the pain inflicted by a corrections officer was "sufficiently serious" to violate "contemporary standards of decency." *Id.* When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated, regardless of whether the injury inflicted is significant. *Cordell v. McKinney*, 759 F.3d 573, 580–81 (6th Cir. 2014).

### 1. *Defendant Haywood's Intent*

Plaintiff's case was based substantially on a video recording of the July 3, 2008 incident. (Pl.'s Ex. 1). Plaintiff reviewed this video during his direct examination and testified that he and Defendant Haywood were having a conversation as they walked down the corridor, that he was being compliant with commands, and that Defendant Haywood attacked him without justification. (Doc. 274-1 at 3–6). Plaintiff also testified that he did not want Defendant Haywood near him because he had been writing grievances and had filed a lawsuit. (*Id.* at 3).

In support of his claim against Defendant Haywood, Plaintiff presented a document that showed that he was found "not guilty" of any rules infractions during the incident. (Pl.'s Ex. 8). He also presented evidence demonstrating that Warden Kearns

4

did not concur with the findings of the first Use of Force (UOF) committee,[2] and, as a result, ordered a second UOF committee to investigate. (Jt. Ex. 2, at 53). Plaintiff's evidence demonstrated that the second UOF committee concluded that, while Defendant Haywood's use of force was justified, it was "inappropriate and/or excessive," and that Defendant Haywood was subsequently disciplined. (Jt. Ex. 2 at 1, 9; Pl.'s Ex. 11).[3]

Defendant Haywood argues that the evidence presented at trial established that it was reasonable for him to perceive a threat of harm and that force was applied in a good faith effort to maintain and restore discipline. Defendants Haywood and Brannigan testified that Plaintiff was not complaint with direct orders given by Defendant Haywood. (*Accord* Deft.'s Ex. 5, at Frames 47, 84). Defendant Haywood maintained that he felt threatened and perceived that Plaintiff prepared to cause him injury in the form of head-butting, spitting, or biting. Defendants Haywood and Brannigan also testified that Plaintiff physically resisted and struggled with each of them. Defendants Haywood and Brannigan, along with the Roger Weaks, chairman of the first UOF committee, and Lieutenant Jason Joseph, an expert witness on UOF, also testified that Plaintiff was at the highest security level and was known for his failure to conform to institutional rules and

---

[2] The first UOF committee found that Defendant Haywood's use of force was justified and was neither inappropriate nor excessive. (Jt. Ex. 2 at 53).

[3] The Court admitted a redacted version of Exhibit P11. (*See* Docs. 262, 271).

5

regulations, as well as for being destructive and assaultive to staff. (*Accord* Jt. Ex. 2 at 7, 58).[4]

Weaks and Joseph testified that the video footage established that Defendant Haywood was attempting to use only approved UOF techniques, as authorized under the UOF Response to Resistance Continuum. (Defs.' Ex. 4, Jt. Ex. 1 at 19).[5] They also testified that the force was determined to have been "inappropriate" in the amount or application of force utilized, because Defendant Haywood failed to use sufficient force to gain control of Plaintiff at the inception of the incident. Weaks and Joseph opined that they would have perceived a threat by Plaintiff and used at least the amount of force used by Defendant Haywood did, if not more, to gain control of Plaintiff.

Notwithstanding Defendants' evidence to the contrary, Plaintiff has submitted evidence which creates a genuine dispute of material fact as to the subjective component of the Eighth Amendment inquiry. Plaintiff testified that he was being compliant and did not threaten Defendant Haywood. A reasonable juror could find support for Plaintiff's claim that Defendant Haywood acted with malicious intent in the video recording of the

---

[4] Plaintiff testified that he intentionally came out of one of his handcuffs and reattached it to his opposite hand hours after the incident on July 3, 2008. (*See* Doc. 274-2 at 65–66). This information could not have been known by Defendant Haywood at the time of the incident, so it is of limited relevance to the instant inquiry.

[5] Weaks and Joseph explained that Plaintiff's assaultive nature permitted correctional staff to use the next step up of responses on this Continuum in order to restore discipline, security, and order to the institution (*i.e.* a "plus one").

6

incident,[6] and in the Rules Infraction Board's determination that Plaintiff was not guilty of any rule violations related to the incident.

Defendant Haywood cites *Plumhoff v. Rickard*, 134 S.Ct. 2012 (2014), in support of his argument. There, it was undisputed that Plaintiff was engaged in a dangerous high-speed car chase that threatened the lives of innocent bystanders. *Id.* Accordingly, the court ruled that the officers acted reasonably in using deadly force to stop the chase and that there was no constitutional violation. *Id.* Here, Plaintiff and Defendant described different versions of the events at issue, and each presented evidence to support his contentions. The jury was required to weigh the credibility of the witnesses' competing testimony and to resolve Plaintiff's claim. Viewing the evidence in the light most favorable to Plaintiff and granting him the benefit of all reasonable inferences, the Court finds that a reasonable juror could conclude that Defendant Haywood acted maliciously and sadistically to cause Plaintiff harm.[7]

## 2. *Plaintiff's Injury*

Plaintiff testified that he suffered golf ball-sized knots on his head, a dislocated shoulder, a dislocated collar bone, open wounds on his head, wrists, and ankles, which were bleeding all over the floor, and rib and back pain. (Doc. 274-1 at 15–16). He also

---

[6] Defendant Haywood maintains that the PDF version of the video demonstrated that Plaintiff did not comply with his orders to face forward and walk straight ahead on at least two occasions. (*See* Deft.'s Ex. 5, at Frames 47, 84). This version does not have sound. The Court declines to undertake the credibility determination necessary to decide whether such orders were given.

[7] In his motion, Defendant Easley points out occasions where the jury could have questioned Plaintiff's credibility. (*See, e.g.*, Doc. 277 at 2–3). The Court will not engage in an assessment of Plaintiff's credibility, or substitute its judgment for that of the jury. *See Schwartz,* 276 F.3d at 903.

testified that he was not adequately examined after the incident because Nurse Julie Brannigan (née Hall) merely peered through the small window in the isolation cell and could not detect all of his injuries. (*Id.* at 14–15). Plaintiff claimed that he was not taken to the infirmary following the incident. (*Id.* at 22). Shannon Bear's statements to the second UOF committee could be read to corroborate this claim. (Jt. Ex. 2 at 35) ("Where was he examined? Might have been J1 or J2. I don't remember.").

Nurse Brannigan's July 3, 2008 Medical Exam Report noted notes that the examination was undertaken because of a "use of force." (Pl.'s Ex. 5). According to the report, Nurse Brannigan found that Plaintiff had abrasions on his forearm and ankle, noted that there was a "potential infection," and directed that the area be cleansed with peroxide and that Plaintiff receive follow-up care. (*Id.*) Nurse Brannigan also recorded Plaintiff's subjective complaints of pain. (*Id.*) In addition to Nurse Brannigan's report, Plaintiff submitted his health service requests from July, August, and November 2008. (Pl.'s Exs. 14-16).

Defendant Haywood argues that Plaintiff's testimony regarding his injuries is not credible and that his minimal injuries were likely caused by his own resistance. Nurse Brannigan testified and the medical exam report showed that Plaintiff was brought to the infirmary and that the abrasions were likely caused by Plaintiff's handcuffs and leg irons.

Even if an injury was minor, contemporary standards of decency are violated where an official uses force maliciously and sadistically to cause harm. *Cordell v. McKinney*, 759 F.3d 573, 580–81 (6th Cir. 2014). As set forth in PartIII.A.1, *supra*, a

8

reasonable juror could find that Defendant Haywood acted with malicious intent. Viewing the evidence in the light most favorable to Plaintiff, a reasonable juror could also find that Plaintiff suffered <u>some</u> injury proximately caused by Defendant Haywood.

### B. Qualified Immunity

The defense of qualified immunity completely protects government officials sued in their individual capacities from Section 1983 actions when they are performing discretionary functions, unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 817 (1982). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). <u>The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."</u> *Id.* at 526. As a result, a court must resolve qualified immunity questions as the earliest possible stage in litigation. *Hunter v. Bryant,* 502 U.S. 224, 227 (1991).

A right is "clearly established if [a] reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). There is generally a two-step analysis to determine whether an official is entitled to qualified immunity. *Thacker v. Lawrence County,* 182 Fed. App'x 464, 468–69 (6th Cir. 2006) (citing *Estate of Carter v. City of Detroit,* 408 F.3d 305, 310–11 (6th Cir. 2005)). First, a court asks whether the official violated a constitutional right. Second, a court determines whether the right violated was clearly established. Once qualified immunity is asserted, "the plaintiff bears the burden of demonstrating that the defendant is not entitled to

9

qualified immunity." *United Pet Supply, Inc. v. City of Chattanooga,* 768 F.3d 464, 478 (6th Cir. 2014).

> In a prior Order, this Court explained:
>
> Plaintiff has proffered evidence, his own testimony, regarding his version of what took place on July 3, 2008. Only a jury, as fact-finder, can make a credibility determination about whether what he claims is true. Clearly, any reasonable correctional officer would know it is unconstitutional to physically attack an inmate who is complying with orders. Moreover, claims regarding the use of excessive force are clearly established as a matter of constitutional law.

*Easley v. Haywood*, No. 1:08-cv-601, 2013 WL 210276, at *6 (S.D. Ohio Jan. 18, 2013), *appeal dismissed*, No. 13-3168 (6th Cir. Aug. 27, 2014). As explained in Section III.A, *supra*, the evidence presented at trial did not conclusively resolve the disputed issues of material fact.

Viewing the evidence presented at trial in the light most favorable to Plaintiff and giving the benefit of all reasonable inferences to him, the Court concludes that reasonable minds could differ as to whether Defendant Haywood's use of force was necessary and undertaken in an effort to restore order. Defendant Haywood is therefore not entitled to qualified immunity as a matter of law. *See Roberson v. Torres*, 770 F.3d 398, 407 (6th Cir. 2014) (affirming a denial of qualified immunity and finding that a corrections officer's use of a chemical agent was "without apparent necessity and in the absence of mitigating circumstances, violates clearly established law.").

## IV. CONCLUSION

Accordingly, for the foregoing reasons:

1. Defendant Gary Haywood's motion for judgment as a matter of law (Doc. 277) is **DENIED**;

2. A second trial by jury as to Plaintiff's excessive force claim against Defendant Haywood shall commence on October 26, 2015, as set forth in the Court's August 10, 2015 Notation Order.

**IT IS SO ORDERED**.

Date: 9/18/2015           __/s/Timothy S. Black_____
                          Timothy S. Black
                          United States District Judge