UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DAVID EASLEY, | : | Case No. 1:08-cv-601 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| GARY HAYWOOD, *et al.,* | : | |
| | : | |
| Defendants. | : | |

**ORDER DENYING PLAINTIFF'S MOTION FOR A NEW TRIAL AS TO HIS
CLAIM AGAINST DEFENDANT CHRISTOPHER BRANNIGAN
(Doc. 279)**

This civil action is before the Court on Plaintiff's motion for a new trial as to his

claim against Defendant Christopher Brannigan (Doc. 279) and the parties' responsive

memoranda (Docs. 280, 282).

## I.    BACKGROUND

On May 4, 2015, this civil action proceeded to a jury trial.  The jury was asked to

determine whether Defendants Gary Haywood and Christopher Brannigan, correctional

officers at the Southern Ohio Correctional Facility ("SOCF"), used excessive force

against Plaintiff on July 3, 2008, in violation of his Eighth Amendment right to be free

from cruel and unusual punishment.  (*See* Doc. 265).

On May 8, 2015, the jury returned a verdict in favor of Defendant Brannigan.[1]

Plaintiff now moves for a new trial as to his claim against Defendant Brannigan.

---

[1] The jury hung as to the excessive force claim brought against Defendant Haywood.

## II.     STANDARD OF REVIEW

Requests for a new trial following trial by jury are governed by Federal Rule of Civil Procedure 59(a)(1)(A), which states that district courts may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]"  Under this provision, district courts may grant a new trial when a jury has reached a seriously erroneous result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party, *i.e.*, the proceedings were influenced by prejudice or bias.  *Williams v. Paint Valley Local School Dist.*, No. C2-01-004, 2003 WL 21799947, at *2 (S.D. Ohio 2003) (citing *Holmes v. City of Massillon*, 78 F.3d 1041, 1045–46 (6th Cir. 1996)).  The governing principle in a court's consideration of a Rule 59(a) motion "is whether, in the judgment of the trial judge, such course is required in order to prevent an injustice; and where an injustice will otherwise result, the trial judge has the duty as well as the power to order a new trial."  *Park West Galleries v. Hochman*, 692 F.3d 539, 544 (6th Cir. 2012) (citation and internal quotation marks omitted).

## III.     ANALYSIS

Plaintiff makes a number of arguments in support of his motion.  The Court addresses these in turn.

**A.     Weight of the Evidence**

Plaintiff argues that the jury's verdict was unreasonable because the evidence established that Plaintiff was not resisting at the time Defendant Brannigan applied force.[2]

> A court can set aside a jury's verdict and grant a new trial if the verdict is against the clear weight of the evidence; however, a new trial may not be granted on that basis unless the verdict was unreasonable. *Taylor v. TECO Barge Line, Inc.,* 517 F.3d 372, 383 (6th Cir. 2008). <u>Therefore, "if a reasonable juror could reach the challenged verdict, a new trial is improper."</u> *Barnes,* 201 F.3d at 821.  A verdict is not unreasonable merely because other inferences or conclusions could have been drawn or because other results are more reasonable. *Strickland v. Owens Corning,* 142 F.3d 353, 357 (6th Cir. 1998).

*Nolan v. Memphis City Sch.*, 589 F.3d 257, 264 (6th Cir. 2009).

To prove his Eighth Amendment claim of excessive force, Plaintiff was required to prove that Defendant Brannigan utilized force "maliciously and sadistically to cause harm," and not in a good-faith effort to maintain or restore discipline. *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002).  Just before Defendant Brannigan intervened on the day in question, Plaintiff was being escorted by Eric Bailey, who had his hands on Plaintiff.  (*See* Pl's Ex. 1).  Plaintiff testified that he was not resisting.

Plaintiff argues that his claim that Defendant Brannigan applied force maliciously and sadistically to cause harm is further supported by the fact that Defendant Brannigan observed the incident between Plaintiff and Defendant Haywood, and declined to

---

[2] *See Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012) (noting that, when the court has found excessive force, "the suspects were compliant or had stopped resisting").

intervene.  Plaintiff also argues that Bailey's statement,[3] and a video recording of the

incident (*see* Pl's Ex. 1), confirm that he was not resisting.  In his statement, Bailey notes

that he witnessed "Haywood struggling with Easley."  (Jt. Ex. 2 at 26).  Bailey explains:

> I placed an outside wrist turn on Easley and helped him to his feet.  Easley
> didn't struggle against me but he turned to Sgt. Haywood stating "hit me;
> hit me."  I started to escort Easley down the hallway and then Officer
> Brannigan took over and Easley appeared to become more upset and
> continued to make comments to Sgt. Haywood.

(*Id.*)  Bailey stated that he did not observe any force he felt was excessive.  (*Id.* at 26–27).

He noted that Plaintiff "continued to be verbally abusive" and that Plaintiff "was not

struggling but Sgt. Haywood had him pinned to the floor and wall."  (*Id.* at 27).

   Even it Bailey's statement could be read to support Plaintiff's claim that he was

not resisting at the time Officer Brannigan took over the escort, Defendant Brannigan

presented evidence which would allow a reasonable juror to reach the opposite

conclusion.  Defendant Brannigan testified that Plaintiff continued to resist and to attempt

to become deadweight, requiring him to use an escort technique.  Defendant Brannigan

testified that the relevant portion of the video recording demonstrated that he had his right

hand securing Plaintiff's wrists and his left hand under Plaintiff's chest, all which

prevented Plaintiff from both falling and thereby hurting himself, as well as preventing

him from going into deadweight.  (*See* Defs.' Ex. 5, Camera 8, frame 2).[4]  Further,

---

[3] Bailey did not appear as a witness.  His statement was included in the second Use of Force
Report.  (Jt. Ex. 2 at 26–27).

[4] Defendants presented a slide-by-slide Portable Document Format ("PDF") version of the actual
video footage, which was converted from the original by the Organized Crime Lab of the Ohio
Attorney General's Office.  (*See* Doc. 257 at 5).

Lieutenant Jason Joseph, an expert witness on the use of force, testified that the video recording depicted Plaintiff as continuing to resist.[5]

The jury must determine whom to believe and how much weight to give each witness's testimony and each piece of evidence.  Defendant Brannigan was on the scene at the time of the incident and could make a determination as to whether he believed Plaintiff was resisting.  Joseph, an expert witness, could opine as to whether Plaintiff was resisting based on his review of the video recording.  A reasonable juror could have credited the evidence presented by Defendant Brannigan over that which was presented by Plaintiff.[6]  Accordingly, the Court declines to disturb the unanimous jury verdict in favor of Defendant Brannigan on the basis that the verdict was against the clear weight of the evidence.

**B.    Prejudice**

*1.  Plaintiff's Restraints*

Plaintiff argues that the Court's order requiring him to wear handcuffs was prejudicial because the handcuffs prevented him from rising to show his respect for the jury and interfered with his ability to participate in the case.

---

[5] Joseph also testified that once a use of force incident arises, it is necessary to continue escort techniques until the inmate is secured in a "strip cage."

[6] In fact, Plaintiff's credibility may have been undermined by his own testimony.  For example, Plaintiff testified that Defendant Brannigan was causing "gashes" on his wrists resulting in "blood" being "all over the floor."  (Doc. 274-1 at 18).  This claim was discounted by the video evidence and the testimony of Joseph and the Use of Force Committee Chairman Roger Weaks, who testified that, if any blood had come into contact with any surface of the prison, a Bio-Hazardous cart would have been used to decontaminate the area, and such use would be documented and included in the Use of Force report.

Prior to trial, Plaintiff moved the Court to permit him to appear in plain clothes and in hidden restraints. (Doc. 227). Plaintiff argued that a stun belt and leg shackles, hidden under a curtained counsel table, with correctional officers nearby, would provide the necessary balance between the safety and security of the courtroom and the protection of his right to a fair trial. (*Id.* at 4). In addition to reviewing the parties' memoranda, the Court held a hearing on the necessity of restraints. (*See* April 27, 2015 Minute Entry and Notation Order).

The Court determined that the Ohio Department of Rehabilitation and Correction ("ODRC") demonstrated an "extreme need" for additional physical restraints. (Doc. 254 at 3–4).[7] The Court ordered Plaintiff to appear at trial in a stun belt,[8] leg shackles, and wrist restraints affixed to a belly chain, concealed from the view of the jury to the extent possible, with one correctional officer seated between Plaintiff and counsel during the course of the trial. (*Id.* at 4).

Plaintiff cites *Davidson v. Riley*, 44 F.3d 1118, 1123 (2d Cir. 1995), for the proposition that, if the Court does not take steps minimize the prejudice resulting from

---

[7] As set forth in the Court's Order, Plaintiff is currently serving a 10 to 25 year sentence, plus an additional 6 year mandatory sentence for a gun specification, for convictions of receiving stolen property, two counts of aggravated robbery, felonious assault, and carrying a concealed weapon. Major Warren of the ORDC explained that Plaintiff is currently at the maximum security level, has a documented history of assaulting staff and other inmates, has violently destroyed state property, and has required the creation of padded cells. (Doc. 236-3 at ¶ 5). At the hearing, Major Warren recalled a 2014 incident in which Plaintiff assaulted a correctional officer, knocking him across the corridor floor. The officer struck his head and had to be taken to an outside hospital for treatment. He sustained neurological injuries which were so severe that he can no longer work as a correctional officer.

[8] The ODRC was not able to procure a stun belt.

restraints, a new trial may be in order, especially where the case is close.[9]  Here, the
Court took such steps.  During trial, Plaintiff sat as far away from the jury as possible.[10]
In addition, counsel tables had covered fronts and sides concealing the restraints, and the
jury was excused when the Plaintiff was moved to the witness stand.  A monitor was used
by all testifying witnesses, so that no witness would be required to hold physical
documents in their hands.

Outside of the presence of the jury, the Court considered whether it would be more
prejudicial for Plaintiff to stand or remain seated as the jury entered and exited the
courtroom.  As a part of its inquiry, the Court asked Plaintiff to stand; when he did so,
rattling from his handcuffs and belly chain was audible.  Accordingly, the Court
determined that it would be less noticeable if Plaintiff remained seated as the jury entered
and exited.  Plaintiff's counsel agreed with the Court's determination, and did not object
to the Court's instruction to Plaintiff to remain seated.[11]  At trial, as is its common
practice, the Court advised the jury that courtroom attendees would rise out of respect
each time the Court dismissed the jury.  To date, Plaintiff has not explained what course

---

[9] Plaintiff presents no support for the proposition that, just because the case was "close" as to one
defendant (*i.e.* Defendant Haywood), the case was also "close" as to another defendant (*i.e.*
Defendant Brannigan).

[10] Approximately six individuals sat between Plaintiff and the jury.  A podium also partially
obscured the jury's view of Plaintiff.

[11] The Sixth Circuit has determined that "a motion for a new trial will not be granted on grounds
not called to the attention of the court during the trial itself unless failing to grant a new trial
would result in gross injustice."  *Park West Galleries,* 692 F.3d at 548 (citing *United States v.
Walton,* 909 F.2d 915, 924 (6th Cir. 1990)).  Plaintiff claims that he preserved this issue for
review through his pre-trial motion *in limine,* in which sought hidden restraints.  (*See* Doc. 227).
Nonetheless, counsel did not raise the specific issues now complained of at trial, at which time
the Court could act on the concerns, as needed.

of action he would have preferred the Court to take.[12]  As the Court has explained, wrist restraints were a necessary precaution, given Plaintiff's history of aggressive behavior. (*See* Doc. 254 at 3–4).[13]

Plaintiff's concern that he was prejudiced by an inability to participate is undermined by the fact that Plaintiff was able to communicate with his counsel through handwritten notes.  (*See* Doc. 279 at 6).  Counsel was also free to ask for a recess so that they could confer with Plaintiff.

The *Davidson* court counseled:

> the trial court has discretion to order physical restraints on a party or witness when the court has found those restraints to be necessary to maintain safety or security; but the court must impose no greater restraints than are necessary, and it must take steps to minimize the prejudice resulting from the presence of the restraints.

44 F.3d at 1122-23.  In that case, the Court found that found that the district court made no effort to mitigate the prejudice in having a party appear in handcuffs and leg-irons before a jury.  *Id.* at 1126.  In that case, plaintiff proceeded *pro se*, so he was

---

[12] In fact, at one point during the proceedings, Plaintiff moved to the side of counsel table, a position from which it was even more likely that his failure to stand would be noticed.

[13] Plaintiff's credibility and tendency towards violence were at issue in the instant case. However, Plaintiff's counsel notified the jury at the outset of the case that Plaintiff had been incarcerated for convictions of Aggravated Robbery, Felonious Assault, Theft and a Gun Specification.  Further, the Use of Force reports noted Plaintiff's "destructive and assaultive" nature.  (*See, e.g.*, Jt. Ex. 2 at 9).  Plaintiff did not object to the proffering of those portions of the reports as evidence.  Courts have counseled that a curative instruction may lessen prejudice to litigants who are required to appear in restraints.  *See, e.g. Woods v. Thieret,* 5 F.3d at 244, 244–49 (7th Cir. 1993).  However, for the Court to give such an instruction, it would have had to call attention to the fact that Plaintiff was wearing such restraints, a fact it was trying to minimize.  In all likelihood, this is why Plaintiff never asked the Court to deliver such an instruction.

conspicuously hampered in handling papers and had to hobble in leg irons from counsel table to the bench during voir dire.  *Id.*

    <u>Here, the Court made every attempt to simultaneously maintain safety in the courtroom and to avoid prejudice to Plaintiff.</u>  For the reasons set forth above, the Court does not find Plaintiff's argument on this issue compelling, especially in light of the evidence presented by Defendant Brannigan.  *See* Section III.A, *supra*.

*2.  Plaintiff's Absence upon the Jury's Return*

    Plaintiff argues that he was prejudiced by the Court's order that he leave the courtroom when the jury returned during the second afternoon of deliberations.

    The jury began its deliberations on Thursday, May 7, 2015.  Deliberations continued through Friday, May 8, 2015, until about 1:00 p.m., when the jury advised the Court that it had reached a unanimous verdict as to Defendant Brannigan but had been deadlocked regarding Defendant Haywood "since yesterday."  (Doc. 280-3).  Shortly thereafter, the Court brought the jury back into the courtroom and, in the presence of all parties, provided a modified *Allen* charge.  (*See* Doc. 268).  The Court encouraged the jurors to continue deliberating, but out of respect for their schedules, advised that it would communicate with them at 3:00 p.m. regarding the status of deliberations.

    Defendants decided to leave for the day.[14]  When the Court spoke with counsel prior to recalling the jury at 3:00 p.m., Plaintiff was present in the courtroom.  The Court advised that it intended to ask the jury whether further deliberations on Monday morning

---

[14] Defense counsel indicates that she believed that, if the jury failed to reach a verdict regarding Defendant Haywood by 3:00 p.m., a hung jury would be declared.

9

would be fruitful.  Defense counsel asked that Plaintiff be required to leave the courtroom prior to the return of the jury, so as to avoid potential prejudice to the Defendants.  The Court required Plaintiff to leave the courtroom, over his objection.  When the jurors returned, they returned a unanimous verdict in favor of Defendant Brannigan and advised that further deliberations as to Defendant Haywood would not be fruitful.  The jurors were polled, thanked by the Court, and released from service.

At the time Plaintiff was asked to leave the Courtroom, the jury had, without question, already reached a unanimous verdict as to Defendant Brannigan.  (*See* Doc. 280-3).  Any feelings the jurors may have had regarding Plaintiff's absence from the courtroom at 3:00 p.m. could not have impacted their previously-made decision.  Accordingly, Plaintiff was not prejudiced by his absence from the courtroom at this time.

### C.      Jury Instructions

Plaintiff argues that the Court's instruction as to the objective component of the excessive force inquiry was confusing and misleading.  Specifically, Plaintiff argues that the relevant instruction did not capture the meaning of the test set forth in *Cordell v. McKinney*, 759 F.3d 573 (6th Cir. 2014).

The Court considers the jury instructions as a whole "to determine whether they fairly and adequately submitted the issues and applicable law to the jury."  *Arban v. West Pub. Corp.,* 345 F.3d 390, 404 (6th Cir. 2003).  A new trial is not required based on flaws in the jury instructions "unless the instructions, taken as a whole, are misleading or give an inadequate understanding of the law."  *Id.*

Here, the Court instructed the jury that Plaintiff had to prove each of the following elements by a preponderance of the evidence: (1) Defendants used force against Plaintiff; (2) Defendants applied the force maliciously and sadistically for the purpose of causing Plaintiff harm, and not in a good faith effort to achieve a legitimate purpose; and (3) Plaintiff suffered injuries as a result of the Defendants' use of force. (Doc. 265 at 15) (emphasis added). The Court then provided further instruction as to the second (subjective) element. (*Id.* at 16).

Plaintiff proposed that the following language be added to the Court's instruction as to the third (objective) element:

> With regard to the third element, Mr. Easley must objectively show that the pain inflicted by Defendants was in violation of the "contemporary standards of decency." When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated, regardless of whether the injury inflicted is significant.

(Doc. 252 at 15). The Court declined to include this language. (*See* Doc. 265 at 15).

Nonetheless, the Court's instruction fairly and adequately submitted the relevant issues to the jury. *Cordell* counsels that, if a correctional officer has acted maliciously and sadistically, contemporary standards of decency are violated, even if an injury is small. *Cordell*, 759 F.3d at 580; *see also Hudson v. McMillian,* 503 U.S. 1, 9 (1992) ("Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury."). The Court's instruction in no way limited the meaning of injury, or required that it be significant. Accordingly, the Court's instructions fairly and adequately submitted the issues and applicable law to the jury.

11

**D.    Defense Counsel's Conduct**

Plaintiff argues that he was prejudiced by three instances of defense counsel's conduct: (1) comments regarding the length of his incarceration; (2) solicitation of inadmissible hearsay; and (3) statements made in closing argument.

"Misconduct by an attorney that results in prejudice may serve as a basis for a new trial.  The burden of showing prejudice rests with the party seeking the new trial, and district courts have broad discretion in deciding whether to grant a motion for a new trial."  *Fuhr v. School Dist. of Hazel Park,* 364 F.3d 753, 759 (6th Cir. 2004) (quoting *In re Air Crash Disaster,* 86 F.3d 498, 524 (6th Cir. 1996)).  A court must determine "whether there is a reasonable probability that the verdict of a jury has been influenced by improper conduct." *City of Cleveland v. Peter Kiewit Sons' Co.,* 624 F.2d 749, 756 (6th Cir.1980); *see also Bridgeport Music, Inc. v. Justin Combs Pub.,* 507 F.3d 470, 478 (6th Cir. 2007) ("If statements made during the course of closing arguments are improper, then this court must set aside the verdict if there is a reasonable probability that the verdict was influenced by those arguments") (internal quotation marks omitted)).  In determining whether to set aside a jury verdict and order a new trial on the basis of prejudice and bias, the Sixth Circuit requires courts to examine the totality of the circumstances, including consideration of the following factors: (1) the nature of the comments, (2) the relevancy of the issue raised before the jury, (3) the manner in which the court treated the comments, (4) the strength of the case,  and (5) the verdict itself. *Id.*

                1.       *Comments Regarding the Length of Plaintiff's Incarceration*

Plaintiff argues that he was prejudiced by comments made regarding the length of his incarceration during defense counsel's opening statement, cross-examination of Plaintiff, and closing argument.

In its Order on Plaintiff's motions in limine, the Court explained that while Defendants may elicit the fact that Plaintiff has been convicted of certain crimes, and was imprisoned as a result, "Defendants have not cited any authority for the proposition that the length of the sentence is admissible." (Doc. 255 at 13). Jointly-submitted exhibits establish that, at least as of July 3, 2008 (the date of the incident at issue) to May 4, 2015 (the commencement of the jury trial), Plaintiff has remained incarcerated. (*See* Jt. Ex. 2 at 2–69). Therefore, the extent defense counsel stated that Plaintiff had been in prison for "years," Plaintiff was not prejudiced. To the extent that defense counsel referenced the length of Plaintiff's sentence, Plaintiff objected, and the Court sustained Plaintiff's objection.

                2.       *Testimony as to the Warden's Opinion*

Plaintiff argues that defense counsel's questioning of Lieutenant Jason Joseph was prejudicial, because counsel elicited hearsay statements regarding the warden's opinion as to the second Use of Force report after the Court had sustained a hearsay objection to

such testimony.  Specifically, Joseph testified that the warden did not think that Defendant Haywood's conduct was excessive or inappropriate.[15]

Here, the Court instructed the jury to disregard such statements.  Despite Plaintiff's assertion that the "bell could not be unrung," juries are presumed to follow the instructions of the court.  *See Richardson v. Marsh*, 481 U.S. 200, 206–07 (1987). Further, in the context of the instant motion, only the claim as to Defendant Brannigan is at issue.

### 3.    *Closing Argument*

Plaintiff argues that he was prejudiced by defense counsel's closing argument because counsel misstated the testimony of several witnesses and asserted arguments for which there was no support in the record.  Specifically, Plaintiff claims that defense counsel tried to paint Plaintiff as a "bad guy" by arguing that he had never taken advantage of any classes during his incarceration, when she had no evidence to support her argument, had not questioned Plaintiff on the subject, and, contrary to counsel's assertion, Plaintiff had attended such classes.  (*See* Doc. 279-1).[16]  Plaintiff did not need to object during closing argument to preserve his right to challenge statements made therein under Rule 59.  *See Park West Galleries,* 692 F.3d at 548.

---

[15] This contradicts the second Use of Force report, in which the committee concluded that, while Defendant Haywood's use of force was justified, it was "inappropriate and/or excessive."  (Jt. Ex. 2 at 1, 9).

[16] Plaintiff also argues that defense counsel unprofessionally referenced Plaintiff's counsel's pregnancy.  While defense counsel's comment was certainly extraneous, Plaintiff fails to explain how he was prejudiced thereby.  Plaintiff has not identified any other specific statements in defense counsel's closing argument that caused him prejudice.

Joseph, who had at one point served as Plaintiff's case manager, testified that Plaintiff did not work or participate in classes; instead, Joseph indicated that Plaintiff would sit and watch the guards. This provided defense counsel with at least some basis to remark on Plaintiff's participation in classes.

Considering the totality of the circumstances, the Court cannot find, by a reasonable probability, that the jury's verdict was influenced by improper conduct, as alleged by Plaintiff. The comments complained of during closing argument were made in passing, and represent only a small portion of the evidence and argument presented to the jury. Further, none of the statements noted above had direct bearing on the excessive force inquiry as to Defendant Brannigan. To the extent the comments implicated Plaintiff's character (*i.e.* those related to the length of plaintiff's sentence and Plaintiff's failure to take classes), the Court finds that these statements were unlikely to have caused the jury to find against Plaintiff.[17] The fact that the jury hung as to the claim brought against Defendant Haywood suggests that the jury did not write Plaintiff off as a "bad guy"; instead, they dutifully considered the Court's instructions and applied the same to the facts.

---

[17] This is especially true because the Court admitted evidence that Plaintiff's had been convicted of aggravated robbery, felonious assault, and theft.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons, Plaintiff's motion for a new trial as to his claim against Defendant Christopher Brannigan (Doc. 279) is **DENIED**.

**IT IS SO ORDERED**.

Date:  9/18/2015                          \_\_/s/Timothy S. Black_____
                                          Timothy S. Black
                                          United States District Judge